IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KELLY ANN DAVIS,
Plaintiff,                                          *
                                                    *
        v.                                          *        Civil No. JFM-11-2637
                                                    *
MONTGOMERY COUNTY DEPARTMENT    *
OF TRANSPORTATION, *et al.*,                 *
Defendants.                                         *
                                                    *
                                                    *
                                              ******

## MEMORANDUM

Plaintiff, Kelly Ann Davis ("Davis"), filed this complaint September 14, 2011 against the

Montgomery County Department of Transportation and the Montgomery County Department of

Environmental Protection (collectively, "defendants"), alleging six counts of employment

discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA")

and the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Davis seeks back pay, front pay, lost

benefits, compensatory damages, pre- and post-judgment interest, and attorneys' fees.

Defendants filed a motion to dismiss or for summary judgment.  The issues have been fully

briefed, and no oral argument is necessary.  *See* Local Rule 105.6.  For the reasons that follow,

defendants' motion for summary judgment is granted.

## Background

Kelly Ann Davis ("Davis") worked as a "Program Specialist I" for the Montgomery

County Department of Public Works and Transportation ("MCDPW") from August 21, 2006

until February 1, 2007.  (Pl.'s Opp'n Defs.' Mot. Dismiss or Summ. J. at 2 ("Pl.'s Opp'n"), ECF

No. 14.)  The Program Specialist position is intended to improve recycling practices at multi-

family and non-residential properties in Montgomery County.  (Compl. ¶ 11, ECF No. 1.)  The

essential duties listed in the job posting included primarily outreach in the form of on-site visits to promote recycling and to train property owners and residents in effective recycling practices. (*Id.* ¶ 12.)  There was no mention of physical activity, heavy lifting, or manual labor among the position's essential duties.  (*Id.*)  Prior to receiving the job offer, Davis was required to submit a Medical Form, on which she disclosed that she was being treated for a ruptured and herniated disc diagnosed in May 2004.  (*Id.* ¶ 15.)  She had been previously diagnosed with a ruptured disk, as well as back and neck pain.  (*Id.*)  Davis supplemented the form with a letter from her treating physician, confirming that she was undergoing treatment to address her spinal problems. (*Id.* ¶ 16.)  Davis's doctor reviewed the job description for Program Specialist I and concluded that Davis could perform the duties listed.  (*Id.* ¶ 17.)

Shortly after beginning work, it became clear to Davis that she would be required to deliver boxes containing flyers, brochures, posters, and handbooks, as well as recycling bins and other receptacles to the properties she visited.  (*Id.* ¶ 24.)  The boxes ranged in weight from 24 lbs. to 48 lbs.  (*Id.* ¶ 25.)  Davis avers that, as a result of such heavy lifting, her back condition worsened.  (*Id.* ¶ 26.)  On October 27, 2006, Davis met with her supervisor, Ms. Monzon-Reynolds, and was told that she was failing to properly distribute the necessary recycling materials on her site visits.  (*Id.* ¶ 27.)  Monzon-Reynolds was aware of Davis's back condition, and during the meeting, Davis provided a doctor's note indicating the specific diagnosis and that her condition was "serious" and "chronic."  (*Id.* )  In response, Monzon-Reynolds relieved Davis of the responsibility to deliver the recycling containers, but Davis was still expected to deliver the boxes of educational materials.  (*Id.* ¶ 31.)  Davis was unable to consistently perform this part of her job.  (*Id.*)  On February 1, 2007, Davis received notice that she was being fired because

she had not delivered recycling materials and for other performance-related reasons, such as tardiness and missing deadlines.  (*Id.* ¶¶ 32–33.)

Without citing a date or making any specific allegations, Davis avers in her complaint that she filed a "timely" charge of discrimination with the Maryland Commission on Human Relations, which then presented her complaint to the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 8.)  In her declaration, however, Davis contends that she first contacted the EEOC directly on July 27, 2007 by calling the charge filing process number. (Davis Decl. ¶ 5, ECF No. 14-1.)  On November 19, 2007, Davis submitted a letter to the EEOC's Baltimore Field Office, setting out facts pertinent to her discrimination charge and stating that she was filing a grievance because she had been wrongfully terminated for her disability.  (*Id.* ¶ 7.)  Along with her letter, Davis submitted a completed EEOC Intake Questionnaire, the job posting from the MCDPW, notes from her chiropractor, and a copy of her faxed Medical History Form sent to the Occupational Medical Services unit August 7, 2006.  (*Id.* ¶ 8.)

The EEOC responded to Davis on or about February 3, 2008, informing her that a Charge of Discrimination had been drafted for Davis's signature.  (*Id.* ¶ 9.)  The EEOC then contacted the Montgomery County Office of Human Rights on or about May 23, 2008.  (*Id.* ¶ 11.) Thereafter, Davis received correspondence from the EEOC on a regular basis and participated in a fact-finding conference November 12, 2009.  (*Id.* ¶¶ 12–17.)  Davis then did not hear from the EEOC for several months, so she sent multiple follow-up emails, only to find out that the investigator assigned to her case had left the EEOC, and the person with whom she would be corresponding did not have any information from the fact-finding conference.  (*Id.* ¶¶ 13, 19–21.)  At no time did the EEOC officers mention any statute of limitations for filing her complaint

3

in court or that there might be issues with the EEOC filing deadline.  (*Id.* ¶¶ 24–25.)  Davis was

under the impression that she would have ninety days in which to file a lawsuit after the EEO

process was completed.  (*Id.* ¶ 26.)  On June 18, 2011, Davis received the EEOC's Right to Sue

letter.  (*Id.* ¶ 27.)  Davis retained counsel for the first time on or about September 9, 2011, and

she filed this suit, alleging six counts of employment discrimination under the Americans with

Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Rehabilitation Act of 1973, 29

U.S.C. § 794, on September 14, 2011.  (*Id.* ¶ 29; Compl. at 1.)

Now pending before the court is defendants' motion to dismiss or for summary judgment.

Defendants contend that Davis's suit should be dismissed because the named defendants,

Montgomery County Department of Transportation and the Montgomery County Department of

Environmental Protection, lack the capacity to sue or be sued and because Davis's complaint is

barred by the statute of limitations.  In the alternative, defendants seek summary judgment on the

theory that Davis's claims are barred because she failed to timely file her EEOC charge.

## Standard of Review

Defendants have moved to dismiss Davis's claim or, in the alternative, for summary

judgment.  The motion to dismiss standard generally tests the sufficiency of the pleadings alone,

whereas summary judgment is a more appropriate standard of review once the facts have been

elicited through the development of the record.  *See Edwards v. City of Goldsboro,* 178 F.3d 231,

243 (4th Cir. 1999) ("[A] Rule 12(b)(6) motion is to test the sufficiency of a complaint;

importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses") (internal quotation marks and alterations omitted).

While the record here is not extensive, it has been developed, submitted, and considered.  The court will therefore decide this matter on summary judgment.[1]

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) ("The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'") (internal citations omitted).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

---

[1] Davis named the Montgomery County Department of Transportation and the Department of Environmental Protection "out of an abundance of caution" and was under the impression that naming specific entities also constituted a naming of Montgomery County itself, "albeit with additional information of the departments for whom Ms. Davis worked."  (Pl.'s Opp'n at 9–10.) In response to defendants' motion to dismiss for failure to name the proper entity, Davis requests either that the court issue an order *nunc pro tunc* reflecting the technical name change or that the court give Davis leave to amend her complaint to reflect that Montgomery County alone is the correct defendant in this action.  Rule 15(a)(2) of the Federal Rules of Civil Procedure suggests that leave to amend should be given freely when justice so requires.  It has long been understood in this court that "if the right party is before the court, although under a wrong name, an amendment to cure the misnomer will be allowed."  *Chambers v. Choice Hotels Int'l,* No. 15, 2011 WL 2457645, at *2 (D. Md. June 15, 2011) (quoting *United States v. A.H. Fischer Lumber Co.,* 162 F.2d 872, 874 (4th Cir. 1947)).  Accordingly, Davis's failure to name Montgomery County, as opposed to specific entities within the County government, does not affect the court's disposition in this case.

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002),

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) and

citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)).

## Analysis

### I.   EEOC Filing Deadlines for ADA and Rehabilitation Act Claims

The exhaustion requirements and filing procedures for the ADA and the Rehabilitation

Act are identical to those under Title VII. *Snead v. Bd. of Educ.*, No. DKC-11-0503, 2011 U.S.

Dist. LEXIS 99165, at *8 (D. Md. Sept. 2, 2011).  Therefore, the timely filing of a charge with

the EEOC is a condition precedent to ADA and Rehabilitation Act claims. *See* 42 U.S.C. §

12117(a) and 29 U.S.C. § 794(a).  The statute of limitations for filing with the EEOC is 180 days

after the alleged unlawful employment practice, except that the deadline is extended to 300 days

in the case of an aggrieved person who has initially instituted proceedings with a state or local

agency with authority to grant relief from such discrimination.  42 U.S.C. § 2000e-5(e).  States

that have "a state or local law prohibiting the unlawful employment practice alleged and

establishing or authorizing a state or local authority to grant or seek relief from such practice" are

called "deferral states." *EEOC v. Hansa Prods., Inc.*, 844 F.2d 191, 192 n.1 (4th Cir. 1988).

Maryland is a deferral state. *See* 29 C.F.R. § 1601.74; *Hansa*, 844 F.2d at 192 n.3.

If the alleged discrimination occurred in a deferral state, a charge may not be filed with

the EEOC "before the expiration of 60 days after proceedings have been commenced under State

or local law, unless such proceedings have been earlier terminated."  42 U.S.C. § 2000e-5(c).

"When a charge is filed prematurely with the EEOC, it is held in 'suspended animation' and automatically filed upon expiration of the 60-day period or termination of the state proceedings." *Hansa*, 844 F.2d at 193 n.4 (quoting 29 C.F.R. § 1601.13).  The extension from 180 days to 300 is meant to give the state time to act on the complaint before the case is filed in court.  *Id*.  The 180/300 day time limits are not jurisdictional but rather are akin to a statute of limitations, which is subject to equitable modification.  *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).

Congress imposed a general requirement of filing within 180 days and extended that to 300 days for deferral states in order to give the charging party an opportunity to invoke state protections without jeopardizing federal rights.  *Mohasco Corp. v. Silver*, 447 U.S. 807, 813–14 (1980).  The extension, however, was not intended to allow residents of deferral states to proceed with less diligence than otherwise required.  *Id*. at 814.  "Congress chose to prohibit the filing of any federal charge until after state proceedings had been completed or until 60 days had passed, whichever came sooner. . . . [T]here is no reason to believe that [Congress] intended deferral state complainants to have the additional advantage of being able to ignore the [300-day][2] limitations period when they failed to invoke their rights early enough to allow the 60-day deferral period to expire within the [300-day] period."  *Id*. at 822.  Thus, "[t]o guarantee that federal rights will be preserved, a claimant in a deferral state must file within 240 days of the discriminatory act.  A charge filed [with the EEOC] between 240 and 300 days of the discriminatory act," as Davis's was here, "may still be effectively filed . . . if the state or local

---

[2] In 1972, Congress amended § 706 by extending the limitations period from 90 days to 180 days for non-deferral states and 210 days to 300 days for deferral states.  *Mohasco* notes this amendment but used the old time frames in this section of its analysis.

proceeding terminates within the [300-day] period."  *Hansa*, 844 F.2d at 192 n. 2 (citing

*Mohasco*, 447 U.S. at 814 n.16).[3]

On November 19, 2007, Davis sent a letter and completed intake questionnaire to the

EEOC, which Davis contends constituted the filing of an EEOC claim.  An EEOC intake

questionnaire constitutes a charge if it is in writing, provides information sufficient to identify

the parties and describe generally the allegedly unlawful employment practices, and if it can be

reasonably construed as a request for remedial action.  *See Fed. Express Corp. v. Holowecki*, 552

U.S. 389, 402–03 (2008) ("It is thus consistent with the purposes of the Act that a charge can be

a form, easy to complete, or an informal document, easy to draft.").  Davis's November 19, 2007

submission to the EEOC was a letter in which she stated that she was filing a "grievence" [sic]

for wrongful termination due to her disability.  (Pl.'s Opp'n at 14.)  Her letter included her hiring

date, her employer's name, and details about her disability and the notice she gave to her

employer about her ability to handle her job responsibilities in light of her disability.  (*Id*. at 15.)

In addition to her letter, Davis submitted an intake questionnaire naming witnesses to

---

[3] The Supreme Court considered and rejected the suggestion that the 60-day period is merely a
limitation on EEOC action, such that the complainant need only file within the 300-day deadline,
and the EEOC then must refuse to act for up to 60 days.  *Mohasco*, 447 U.S. at 825.  Given that
Congress intended to encourage prompt processing of all discrimination charges, the *Mohasco*
Court read the statute as requiring that the EEOC's investigation itself begin within 300 days of
the alleged wrongful practice.  *Id*.  While 60 days may not seem like a large delay, especially in
light of the length of the EEOC's backlog and the time it takes to process a charge, the Court
declined to insert any additional days into Congress's procedural scheme.  *Id*. at 825–26.  Thus,
the 60-day period in which the EEOC may not act requires that the "complainant must file a
charge with the appropriate state or local agency, or have the EEOC refer the charge to that
agency, within 240 days of the alleged discriminatory event in order to ensure that it may be filed
with the EEOC within the 300-day limit."  *EEOC v. Commercial Office Prod. Co.*, 486 U.S. 107,
111 (1988).

discriminatory incidents and describing the history of her requests for reasonable accommodation.  (*Id.*)  These submissions are sufficient to constitute a filing under the *Holowecki* test.

The date of Davis's EEOC filing is therefore November 19, 2007, even though she did not sign the EEOC's Charge of Discrimination form until February 3, 2008.  Davis was dismissed from the MCDPW February 1, 2007, and her filing date was approximately nine and a half months, or roughly 291 days, later on November 19, 2007.  This filing date appears to be within the 300-day time limit, but only if the mandatory 60-day waiting is omitted from the calculation.  The addition of the 60-day waiting period results in an official EEOC filing date 351 days after the allegedly discriminatory employment action.  Even assuming the EEOC forwarded Davis's claim immediately to the Maryland Commission on Human Relations, they would have had to resolve her claim before the 300th day to preserve the timeliness of Davis's filing.  Because Davis's claim was not filed within 240 days of the allegedly discriminatory act, and there is no evidence that Maryland terminated its proceedings before the 300 days elapsed, Davis's EEOC complaint was untimely.  Her ADA and Rehabilitation Act claims are therefore time-barred unless the limitations period is subject to equitable tolling.

## II.    Statute of Limitations

Section 504 of the Rehabilitation Act of 1973 incorporates certain anti-discrimination provisions of the ADA.  *See* 29 U.S.C. § 794, et seq.  Neither the ADA nor the Rehabilitation Act contains a specific statute of limitations.  It is often the case that federal statutory law does not provide a statute of limitations or tolling rules.  *Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478, 483 (1980).  It is long settled that where federal law does

not supply that information, the court will borrow the statute of limitations for the analogous

state cause of action. *Id*. at 484; *see also Johnson v. Ry. Express Agency, Inc.* 421 U.S. 454, 465

(1975) (holding, in the context of a § 1981 claim, that the state statute of limitations applies to

federal actions unless it is "inconsistent with the federal policy underlying the cause of action

under consideration").[4]

In Maryland, the general three-year statute of limitations governing civil actions applies

to both the Rehabilitation Act and the ADA. *See Schalk v. Assoc. Anesthesiology Practice*, 316

F. Supp. 2d 244, 251 (D. Md. 2004) (applying Maryland's three-year limitations period to a

Rehabilitation Act claim); *Kohler v. Shenasky*, 914 F. Supp. 1206, 1211 (D. Md. 1995) (applying

Maryland's three-year limitations period to both the ADA and the Rehabilitation Act).  Davis

filed her claims September 14, 2011, and she was dismissed from her job with the MCDPW

February 1, 2007.  Because the Rehabilitation Act and the ADA have a three-year limitations

period in Maryland, any claims based on allegedly discriminatory activity taking place prior to

September 14, 2008 are time-barred.  Accordingly, even if Davis had timely filed with the

EEOC, which she did not, her claims would fail unless the statute of limitations is subject to

equitable tolling.

## III.    Equitable Tolling

Davis contends that her failure to timely file her EEOC complaint and her federal court

claims should be excused according to equitable tolling principles.  The Fourth Circuit has

---

[4] In *Robertson v. Wegmann*, 436 U.S. 584 (1978), the Supreme Court emphasized that "a state
statute cannot be considered 'inconsistent' with federal law merely because the statute causes the
plaintiff to lose the litigation." *Id*. at 593.  Otherwise, "there would be no reason at all to look to
state law, for the appropriate rule would then always be the one favoring the plaintiff, and its
source would be essentially irrelevant." *Id*.

cautioned that equitable tolling is reserved for "those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (*quoting Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see also Kramer v. Bd. of Educ. Of Baltimore Cnty.*, 788 F. Supp. 2d 421, 425–26 (D. Md. 2011).

Davis is correct that the timely filing of an EEOC charge is not a jurisdictional prerequisite to suit in federal district court and that it is subject to both waiver and equitable tolling. *Zipes*, 455 U.S. at 393. Likewise, statutes of limitation, like the three-year Maryland statute applicable to the Rehabilitation Act and the ADA, are subject to equitable tolling. *See id.* However, federal courts rarely extend equitable tolling relief. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 90 (1990). Equitable tolling is typically reserved for situations when the claimant has diligently pursued her judicial remedies by filing a pleading, albeit defective, during the statutory period or where the claimant's failure to timely file was induced by her adversary's misconduct. *Id.* Courts are less forgiving when late filings result from a failure to exercise due diligence in preserving one's legal rights, even when that lack of diligence is the result of inadvertent failure on the part of a litigant acting without representation of counsel. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. . . . '[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" (quoting *Mohasco*, 447 U.S. at 826)) (internal citations omitted).

When a plaintiff claims excusable ignorance of a filing deadline, the court must determine whether to allow equitable tolling. Courts have often cited five factors that should be

weighed when considering whether to allow equitable tolling in a given case: "(1) lack of actual

notice of filing requirement; (2) lack of constructive knowledge of the filing requirement; (3)

diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's

reasonableness in remaining ignorant of the notice requirement." *Kale v. Combined Ins. Co. of

Am.*, 861 F.2d 746, 752–53 (1st Cir. 1988) (citing *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.

1988); *Bassett v. Sterling Drug, Inc.,* 578 F. Supp. 1244, 1247 (S.D. Ohio 1984); *Hay v. Wells

Cargo, Inc.,* 596 F. Supp. 635, 638 (D. Nev. 1984), *aff'd,* 796 F.2d 478 (9th Cir. 1986); *Wright v.

State of Tennessee*, 628 F.2d 949, 953 (6th Cir. 1980) (en banc)).  "While it is clear that an

employee's ignorance of [her] statutory rights, in itself, will not toll a statute of limitations,"

evidence of employer's failure to post EEOC notices may be a reason to apply equitable tolling,

at least until the employee receives actual notice or retains an attorney.  *Kale*, 861 F.2d at 753

(internal citations omitted).

Equitable tolling is not available for employees who had actual or constructive

knowledge of their rights.  Actual awareness occurs when an employee learns that there is a

statute outlawing the discrimination at issue, even if the employee is only generally aware of the

legal right to obtain redress.  *Id*.  Mere ignorance of a specific statutory provision, such as a

limitations period, is not sufficient to invoke equitable tolling.  *See id*. at 754.  Rather,

"ignorance in the context of equitable tolling . . . means ignorance of the unlawfulness of the

defendant's conduct. . . . Equity only requires that a plaintiff be aware that a statute has been

passed that protects workers against . . . discrimination.  It does not require that [the plaintiff]

know of all the filing periods and technicalities contained in the law." *Id*.  "When an employee

is generally aware of [her] rights, ignorance of specific legal rights or failure to seek legal advice

should not toll the limitation period." *McClinton v. Alabama By-Prods. Corp.*, 743 F.2d 1483, 1486 (11th Cir. 1984); *see also Jackson*, 961 F.2d at 580.

Davis claims that equitable tolling should apply to rectify any problems she has with statutory deadlines, but the record makes clear that she was aware of statutory protections against discrimination, even if she was not specifically aware of the accompanying filing deadlines. Furthermore, there is no evidence that Davis was "prevented from asserting [her] claims by some kind of wrongful conduct on the part of the defendant" or that "extraordinary circumstances beyond [Davis's] control made it impossible to file the claims on time." *Harris*, 209 F.3d at 330 (quoting *Alvarez-Machain v. United States,* 107 F.3d 696, 700 (9th Cir. 1996)); *see also Rouse*, 339 F.3d at 246 (holding that equitable tolling is only appropriate under "extraordinary circumstances . . . beyond [plaintiff's] control or external to [her] own conduct"). Davis's claims are therefore ineligible for equitable tolling.

Finally, as to the untimely EEOC filing specifically, the Supreme Court considered and rejected an assertion like Davis's that she should not be held to the usual limitations period because she was acting without counsel. "The unfairness argument is based on the assumption that a lay person reading the statute would assume that he had 300 days in which to file [her] first complaint with either a state or federal agency." *Mohasco*, 447 U.S. at 825. The Supreme Court found no merit in this argument. Rather, the Court stated that "a lay person would be more apt to regard the general obligation of filing within 180 days as the standard of diligence [she] must satisfy, and that one who carefully read the entire section would understand it to mean exactly what it says." *Id.*

**Conclusion**

While time limitations are inherently arbitrary, the filing deadlines at issue here were not so short as to deny Davis the opportunity to seek a remedy for the alleged discrimination she suffered.  In creating the ADA and the Rehabilitation Act, Congress must have determined that "most genuine claims of discrimination would be promptly asserted and that the costs associated with processing and defending stale or dormant claims outweigh the federal interest in guaranteeing a remedy to every victim of discrimination."  *Id.* at 820.  Because Davis's EEOC charge was not timely filed, and because her claims are barred by the statute of limitations, summary judgment is entered in defendants' favor.


March 6, 2012                                                            /s/
Date                                                 J. Frederick Motz
                                                     United States District Judge